The **BROOKLYN UNION GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Public Service Electric and Gas Co., Public Service Commission of the State of New York, Philadelphia Electric Co., Intervenors.**

No. 78–1231.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1979.

Decided May 30, 1980.

Rehearing Denied July 25, 1980.

Joseph P. Stevens, Brooklyn, N.Y., with whom Barbara M. Gunther, Alvin Adelman and William R. Coleman, Brooklyn, N.Y., were on brief, for petitioner.

J. Paul Douglas, Atty., Federal Energy Regulatory Commission, Washington, D.C., with whom Robert R. Nordhaus, Gen. Counsel and Howard E. Shapiro, Washington, D.C., were on brief, for respondent.

James R. Lacey, Newark, N.J., was on brief, for intervenor, Public Service Elec. and Gas. Co.

Peter H. Schiff, Gen. Counsel, Albany, N.Y., Richard A. Solomon and Dennis Lane, Washington, D.C., were on brief, for intervenor, The Public Service Commission of the State of New York.

Frederick Moring, James A. Wilderotter and Philip M. Marston, Washington, D.C., were on brief, for Associated Gas Distributors, Amicus Curiae, urging reversal.

Philip M. Marston, Washington, D.C., for intervenor, Philadelphia Elec. Co.

Before ROBINSON and ROBB, Circuit Judges and RICHEY *, United States District Court Judge for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

The proceedings in this case began before the Federal Power Commission, now the Federal Energy Regulatory Commission, when Transcontinental Gas Pipe Line Corporation (Transco) filed applications for certificates of public convenience and necessity authorizing interruptible transportation service by Transco to three public utilities. The three utilities, each of which distributes and sells natural gas at retail, are Delmarva Power & Light Company (Delmarva), Pennsylvania Electric Company (PECO), and South Jersey Gas Company (South Jersey). We shall refer to them as "the utilities" or "the purchasers". The Transco applications recite that pursuant to contracts among Transco, the utilities and The Brooklyn Union Gas Company, the utilities have agreed to purchase volumes of synthetic natural gas (SNG) from Brooklyn Union. Under the contracts the utilities will obtain the SNG by displacement, that is, Brooklyn Union will make natural gas available to the utilities by reducing Brooklyn Union's takes from Transco, and Transco will then deliver equivalent quantities of natural gas to the utilities. Brooklyn Union and all three utilities are customers of Transco.

Petitioner Brooklyn Union manufactures synthetic gas and distributes and sells at retail a mixture of synthetic and natural gas in a service territory comprising the Boroughs of Brooklyn and Staten Island and part of the Borough of Queens, in the city of New York. Brooklyn Union's gas utility operations are subject to the jurisdiction of the state of New York.

Brooklyn Union owns and operates a plant, located in the Greenpoint area of the Borough of Brooklyn, which produces from a naphtha feedstock synthetic gas substantially similar to natural gas. Brooklyn Union uses the SNG from the Greenpoint Plant to help offset curtailments imposed by its natural gas suppliers. The Greenpoint Plant has sufficient capacity to permit Brooklyn Union to make sales to other gas distribution companies in addition to offsetting Brooklyn Union's curtailments.

Brooklyn Union filed petitions to intervene in the proceedings of Transco's applications, and asked for declaratory orders disclaiming the Commission's jurisdiction. Referring to the contracts for the sale of SNG to the utilities, Brooklyn Union's petitions represent that delivery of the SNG would be accomplished "by displacement, through reductions in Transco's deliveries to [Brooklyn Union] and increases in Transco's deliveries to [the purchasers], of quantities of [natural] gas thermally equivalent to the quantities of synthetic gas sold by [Brooklyn Union] to [the purchasers]". A copy of Brooklyn Union's contract is attached to each Transco application. The contracts provide that Brooklyn Union will deliver SNG at "the tailgate of the SNG plant" and "that [it] will assist [the purchasers] to receive the [SNG] by relinguishing [sic] thermally equivalent volumes of [natural] gas at [the] appropriate delivery points of Transco". The contracts also provide that, "[a]s between the parties hereto, the sale[s] shall be deemed to have occurred at the tailgate of the . . . SNG plant" and that "[Brooklyn Union] shall assist [the purchasers] by releasing thermally equivalent quantities of [natural] gas at the appropriate New York delivery points of Transco". The Commission consolidated the proceedings on the Transco applications.

Analyzing the contracts, the Commission concluded that they provide for the sale in interstate commerce of natural gas, and only natural gas. At no time, said the Commission, is nonjurisdictional SNG introduced in interstate commerce or mixed with jurisdictional gas; on the contrary the SNG is used by Brooklyn Union on its own distribution system. The Commission reasoned that at most the SNG was the consideration for the sale of natural gas to the three

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

utilities. Accordingly, the Commission found that the contractual obligations to sell SNG were mere devices to avoid Commission jurisdiction. It therefore disregarded the form of these transactions and found the true nature of the transactions to be sales of natural gas for resale in interstate commerce. The Commission thus concluded that before commencing the proposed sales Brooklyn Union must obtain a certificate of public convenience and necessity pursuant to section 7(c) of the Natural Gas Act (15 U.S.C. § 717f(c)). Applications for rehearing having been denied the case comes to us on petition for review.[1] We affirm the Commission.

■ It is settled, and of course the Commission recognizes, that it lacks jurisdiction over the sale of SNG unmixed with natural gas. *Public Service Comm'n of the State of New York v. FPC*, 177 U.S.App.D.C. 245, 246–47, 543 F.2d 392, 393–94 (1976). The question before us is simply whether the Commission reasonably interpreted Brooklyn Union's contracts as providing for jurisdictional sales of natural gas for resale in interstate commerce, rather than non-jurisdictional sales of SNG.

■ In making its determination the Commission was required to look at the practical results achieved by the Brooklyn Union contracts. The terminology of the contracts—the label the parties put upon their transactions—was not decisive. Thus, although the contracts purported to be only for the purchase and sale of SNG, the Commission was entitled to conclude on the basis of the facts that the contractual obligation to sell SNG was "purely artificial" and a mere device to avoid Commission jurisdiction. The facts were that under the contracts Brooklyn Union transferred only

natural gas and retained the SNG on its distribution system. Brooklyn Union then released "thermally equivalent quantities of [natural] gas at the appropriate New York delivery points of Transco" for the use of the three utilities. The SNG produced by Brooklyn Union was merely the consideration for the sale of natural gas in interstate commerce. *See United Gas Improvement Co. v. Continental Oil Co.*, 381 U.S. 392, 399–401, 85 S.Ct. 1517, 1521–22, 14 L.Ed.2d 466 (1965); *California v. LoVaca Gathering Co.*, 379 U.S. 366, 369, 85 S.Ct. 486, 488, 13 L.Ed.2d 357 (1965); *J. M. Huber Corp. v. Denman*, 367 F.2d 104, 114 (5th Cir. 1966). "Any other result would exalt form over substance, would give greater weight to the technicalities of contract draftsmanship than to the achievement of the purposes of the Natural Gas Act, and would impair [the Commission's] ability to control the price received for [natural] gas sold . . . in interstate commerce to the detriment of the ultimate consumer." *Texas Eastern Transmission Corp.*, 29 F.P.C. 249, 256 (1963), *aff'd sub nom. United Gas Improvement Co. v. Continental Oil Co., supra.*

We agree with the Commission's conclusion in its order denying rehearing that

> Not to assert jurisdiction over BUG would thwart the intent of the Natural Gas Act, i. e., "to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges." The ramifications of the Commission's disclaiming jurisdiction over BUG are far-reaching. Any company could circumvent Commission jurisdiction by contracting to sell non-jurisdictional gas; notwithstanding whether such gas was produced or exchanged, the company could sell natural gas by reducing its takes of interstate gas from a pipeline or

---

1. Intervenor Public Service Electric and Gas Company (Public Service) is a utility which distributes and sells natural gas at retail in parts of New Jersey. Public Service participated in the proceedings before the Commission. Intervenor Public Service Commission of the State of New York (New York) is an agency of the state of New York which, among other things, regulates Brooklyn Union, including its operations and sales of natural gas at retail in New York. The Public Service Commission participated in the proceedings before the Commission. *Amicus Curiae* Associated Gas Distributors (AGD) is an association of companies distributing and selling natural gas at retail in their respective service areas in the east coast states. AGD did not participate in the proceedings before the Commission; however Delmarva, PECO and South Jersey are members of the group.

pipelines it shared in common with its contractual purchaser. The contract to sell non-jurisdictional gas, then, would allow the seller to purchase natural gas at federally regulated prices and resell it for whatever the market would bear.

■ Brooklyn Union, Public Service, New York and AGD contend that the Commission need not assert jurisdiction over Brooklyn Union's sales because the Commission can effectively regulate such sales by attaching conditions to the transportation certificates granted to Transco. In other words, they contend that no regulatory gap would exist if the Commission disclaimed jurisdiction.

These contentions fail to recognize the obvious: the Commission cannot disclaim jurisdiction over a jurisdictional sale. Moreover, they confuse the Commission's authority on the one hand to regulate indirectly, in certificate proceedings, those sales not subject to its rate jurisdiction, with the obligation on the other hand to regulate affirmatively those sales that are subject to its rate jurisdiction.

In the Natural Gas Act, the Congress intended "to give the Commission jurisdiction over the rates of all wholesalers of natural gas in interstate commerce." *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 682, 74 S.Ct. 794, 799, 98 L.Ed. 1035 (1954). Because the sales here are sales of natural gas in interstate commerce for resale, the Commission lacked the authority to disclaim jurisdiction. *FPC v. Texaco, Inc.*, 417 U.S. 380, 394–95, 94 S.Ct. 2315, 2325, 41 L.Ed.2d 141 (1974); *United Gas Improvement Co. v. Continental Oil Co., supra*, 381 U.S. at 401, 85 S.Ct. at 1522.

■ That the Commission possesses authority to regulate nonjurisdictional sales indirectly, in some circumstances, does not mean that it may decline to regulate jurisdictional sales. Where it has direct jurisdiction, of course, it has discretion to determine which regulatory method it will use with respect to particular sales. *E. g., FPC*

*v. Texaco, Inc., supra*, 417 U.S. at 386–393, 94 S.Ct. at 2320–24; *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 642, 92 S.Ct. 1827, 1839, 32 L.Ed.2d 369 (1972); *Permian Basin Area Rate Cases*, 390 U.S. 747, 776–77, 88 S.Ct. 1344, 1365, 20 L.Ed.2d 312 (1968); *Wisconsin v. FPC*, 373 U.S. 294, 308–310, 83 S.Ct. 1266, 1274–75, 10 L.Ed.2d 357 (1963). In this case the Commission recognized the burdens that direct regulation might impose on Brooklyn Union and stated that Brooklyn Union could petition for waiver of any "onerous" rule or regulation.[2]

■ The cases cited in support of indirect regulation all concern the Commission's authority to regulate indirectly those sales not subject to its rate jurisdiction. *E. g., FPC v. Transcontinental Gas Pipe Line Corp.*, 365 U.S. 1, 3–4, 23–26, 81 S.Ct. 435, 447–48, 5 L.Ed.2d 377 (1961). Because the Commission cannot regulate directly the prices paid for gas in such transactions, it must rely on its authority to impose conditions in certificates to control the prices and to protect the public interest. *Id.* at 23–28, 81 S.Ct. at 447–49. But this is not such a case.

■ In *Atlantic Refining Co. v. Public Service Comm'n of New York*, 360 U.S. 378, 388, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312 (1959), the Supreme Court held that the "[Natural Gas] Act was so framed as to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges." The Court there confirmed the Commission's duty to protect consumers by attaching conditions to certificates, limiting the initial rate, permitting the Commission to suspend any increases, and providing for refunds of any amounts later found to be excessive. *Id.* at 388–392, 79 S.Ct. at 1253–55. In this case, however, the Commission found that the indirect regulation envisioned by Brooklyn Union, Public Service, New York and AGD would not provide such protections. In particular, the Commission found that New

---

**2.** This answers the burden arguments raised by Brooklyn Union (Br. at 28), Public Service (Br. at 4–5), and AGD (Br. at 7–8).

York's proposal would deprive it of the authority to set an initial price, to determine the reasonableness of the initial price, to suspend and disallow or modify a requested increase, to investigate Brooklyn Union and to require Brooklyn Union to make available relevant records. On the basis of these findings the Commission concluded that indirect regulations would be both inappropriate and ineffective. We are not persuaded that the Commission erred.

The orders of the Commission are

*Affirmed.*